**Joselyn RAMIREZ, Plaintiff,**

v.

**NEW YORK PRESBYTERIAN HOSPITAL and Louis Yturbide, Defendants.**

No. 99 Civ. 3050(DC).

United States District Court, S.D. New York.

Feb. 15, 2001.

Levy Phillips & Konigsberg, LLP, by Diane Paolicelli, Diana Israelashvili, New York City, for Plaintiff.

Goodman & Zuchlewski LLP, by Geoffrey A. Mort, New York City, for Defendants.

### MEMORANDUM DECISION

CHIN, District Judge.

In this case, plaintiff Joselyn Ramirez sues her employer, defendant New York Presbyterian Hospital (the "Hospital"), and one of her co-employees, defendant Louis Yturbide, for hostile work environment sexual harassment. Defendants move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the grounds that (1) most of the alleged incidents, including the more serious ones, are time-barred, (2) the continuing violation doctrine does not apply here, and (3) the remaining incidents do not, as

a matter of law, rise to the level of sexual harassment. As set forth below, because genuine issues of fact exist for trial, including whether a reasonable person in plaintiff's position would have found Yturbide's conduct sufficiently severe or pervasive to alter the conditions of her employment, defendants' motion is denied.

## BACKGROUND

### A. *The Facts*

The facts alleged by plaintiff under oath are assumed to be true for purposes of this motion. Together with certain undisputed facts, they are as follows:

On October 20, 1990, plaintiff began her employment with the Hospital as a medical assistant. In January 1996, she began working in the Hospital's Urgi–Care Clinic. She became a member of Local 1199 of the National Health and Human Service Employees' Union, AFL–CIO ("Local 1199").

Beginning in November 1995, Yturbide was employed by the Hospital as a housekeeper. His duties included cleaning various parts of the Urgi–Care Clinic.

In January 1996, plaintiff and Yturbide were involved in an incident in the Urgi–Care Clinic's linen closet. Yturbide grabbed plaintiff's shoulders and started to kiss her fingers. He stated: "I can't help it, I'm just attracted to you, you're so beautiful, you have such a beautiful body, and that smile, I just want to kiss that mouth." (Ramirez Dep. Tr. 51). Plaintiff immediately reported the incident to G.O. Armond, Nurse Manager of the Urgi–Care Clinic. (*Id.* at 67–68). Plaintiff specifically directed Armond not to talk to Yturbide or anybody else at the Hospital about the incident. (*Id.* at 69–72). Plaintiff stated that her preference would be to "just monitor the situation." (*Id.* at 69).

In February 1996, Yturbide grabbed plaintiff's breasts. (*Id.* at 76–77). Plain-

tiff, however, did not report this incident to anybody. (*Id.* at 78).

After this incident in February 1996 and through the beginning of 1997, Yturbide frequently stood close to plaintiff, bumping into her and brushing his body against her. (*Id.* at 79–83). Plaintiff discussed this behavior with Armond "maybe four times" throughout 1996 (*id.* at 86), and each time they decided to deal with the situation informally and not to inform anybody else at the Hospital. (*Id.* at 87).

In January or February 1997, plaintiff had another incident with Yturbide. After she had a brief conversation with him, he shoved her onto a metal table. (*Id.* at 89). She immediately brought this to the attention of Emme Hernandez, an administrative secretary and friend of plaintiff. (*Id.* at 92).[1]

In March 1997, plaintiff complained to Armond that she "could not take it anymore." (*Id.* at 114). Armond asked plaintiff, "Do you want me to call Human Resources?" (*Id.* at 122–23). Plaintiff replied, "No, no. I'm going to call the union . . . and we're going to try to intervene and have an internal meeting so that we can save this man's job . . . ." (*Id.* at 123).

Shortly after this conversation with Armond, plaintiff and Yturbide met with two Local 1199 representatives. (*Id.; Def. R.* 56.1 ¶ 14). At this meeting, plaintiff recounted all of Yturbide's conduct from the previous year and accused him of sexual harassment. (Def. R. 56.1 ¶ 15). Yturbide denied plaintiff's accusations. He explained that he had a "bad habit" of using terms such as "sweetie" and "my love," but that he never did anything to hurt her. (Tr. 126).

After the meeting with the Local 1199 representatives, "[Yturbide] didn't physically touch [plaintiff] anymore." (*Id.* at 359; *see also id.* at 138, 142–43). He did, however, as plaintiff explained, continue

---

1. In an interview conducted by the Hospital's Labor Relations Specialist, Hernandez recalled a talk she had with plaintiff during which plaintiff was upset, but Hernandez stated that plaintiff did not explain why she was upset. (Israelashvili Ex. H, at 210).

"the stalking behavior, which is going into a room, ... leaning by the doorway and just staring at me while I'm working. And then if I would turn around he'd go, 'Uhhh,' and he'd just gasp and walk away exaggerated, and with an angry ... scowl." (*Id.* at 135; *see also* Ramirez Aff. ¶ 3).[2] Yturbide stared at plaintiff in this manner "once a week." (Tr. 140). In addition, during this time Yturbide banged loudly on garbage containers "for no other reason than to get my attention and/or scare me." (Ramirez Aff. ¶ 4).

At the end of 1997, plaintiff went on sick leave because of vertigo and "pressure in [her] head, which [she] attribute[d] to the stress from the continuous sexual harassment by Yturbide and the Hospital's failure to effectively act upon [her] complaints." (*Id.* ¶ 5). Then, in June 1998, plaintiff took an extended disability leave "because of [her] emotional breakdown at work caused by the overwhelming stress of the sexual harassment." (*Id.*).

### B. *Prior Proceedings*

In July 1998, plaintiff filed an official complaint of sexual harassment with the Hospital's Human Resources Department against Yturbide (Tr. 150; Def. R. 56.1 ¶ 19), and on August 3, 1998, she filed a complaint with the New York Division of Human Rights. The EEOC issued a "Right to Sue" letter on February 16, 1999. (Compl. ¶ 6).

On April 26, 1999, plaintiff commenced this action, asserting claims for violations of Title VII and the New York State and New York City Human Rights Laws, and for infliction of extreme emotional distress and assault.

This motion followed.

2. Plaintiff frequently described this behavior as "stalking," which she defined as "standing there posing and just ... watching me with his eyes and just adamantly gazing at me." (Tr. 140).

3. As to defendant Yturbide, however, the Second Circuit has held that, "an employer's agent may not be held individually un-

### DISCUSSION

■ Defendants move for summary judgement on the grounds that the more serious alleged incidents of harassment are time-barred, and that the conduct within the limitations period does not rise to the level of sexual harassment under Title VII. Because material issues of fact exist for trial, defendants' motion is denied.[3]

### A. *Applicable Law*

#### 1. *Summary Judgment Standard*

Summary judgment will be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but [to] determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, there exists a dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248–49, 106 S.Ct. 2505 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *see Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir.1991).

To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

der Title VII." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995). Accordingly, to the extent that plaintiff is seeking to hold Yturbide liable under Title VII for alleged sexual harassment at the Hospital, that claim is dismissed. Plaintiff may, however, proceed with her state and city law claims against Yturbide.

*Co.*, 475 U.S. at 586, 106 S.Ct. 1348. There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. As the Court held in *Anderson,* "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

### 2. *Title VII Statute of Limitations*

Title VII has its own statute of limitations, which provides that, "in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State ... agency ..., such charge shall be filed within three hundred days after the alleged employment practice occurred."[4] 42 U.S.C. § 2000e–5(e)(1); *see Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998). Here, plaintiff filed her discrimination claim with the New York Division of Human Rights on August 3, 1998. (Israelashvili Aff. Ex. K). Thus, defendants argue that all of the alleged acts of discrimination that occurred before October 7, 1997, are time-barred. *See Butts v. City of New York,* 990 F.2d 1397, 1401 (2d Cir.1993).

Plaintiff argues that the continuing violation doctrine applies here, and that all of the alleged acts of discrimination, including those outside the limitations period, therefore, should be included in her claim. The continuing violation exception provides that:

> [A] plaintiff who files a timely [administrative] charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination extends the limitations period for all claims of discriminatory acts committed under that policy even if those acts, standing alone, would

have been barred by the statute of limitations.

*Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997). "[A] continuing violation may be found 'where there is proof of specific ongoing discriminatory polices or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Quinn,* 159 F.3d at 766 (quoting *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994)). The Second Circuit has noted, however, that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Id.* (quotations and citations omitted).

### 3. *Hostile Environment Sexual Harassment*

■ To prevail on a hostile environment sexual harassment claim under Title VII, a plaintiff must establish both (1) a hostile work environment and (2) that a basis exists for imputing the harassing conduct to the employer. *See Distasio v. Perkin Elmer Corp.,* 157 F.3d 55, 62 (2d Cir.1998). To establish a hostile work environment, plaintiff must show that her workplace was "permeated with 'discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Howley v. Town of Stratford,* 217 F.3d 141, 153 (2d Cir.2000) (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Whether the working environment was "hostile" or "abusive" depends on the "totality of circumstances," including: "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

---

4. The parties have not addressed the issue of the statutes of limitations applicable to plaintiff's state and city claims. In light of my

ruling on the Title VII limitations period, however, I need not address this issue.

with an employee's work performance.'" *Distasio*, 157 F.3d at 62 (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367). This analysis is done from both a subjective and an objective viewpoint, *id.*, in other words, from the viewpoint of both the plaintiff and a reasonable person.

## B. *Application*

### 1. *The Continuing Violation Exception*

■ The continuing violation exception may apply here for three reasons. First, the record demonstrates that issues of fact exist as to whether Yturbide's allegedly harassing conduct was the result of "specific ongoing discriminatory ... practices," or whether the harassment was "permitted by the [Hospital] to continue unremedied for so long as to amount to a discriminatory policy or practice." Specifically, Armond's knowledge of the harassment from its beginning in January 1996 and the Hospital's failure to take any affirmative steps to address the situation until August 1998 constitute evidence of such a policy or practice.[5] Hence, these are issues to be resolved by a trier of fact.

Second, the record contains evidence that the untimely acts of harassment were continuous in time with the timely acts that plaintiff has alleged. *Cf. Quinn*, 159 F.3d at 766 (noting that untimely acts will not be time-barred if they were "continuous in time with one another or with the timely acts [plaintiff] has alleged"). Plaintiff testified that Yturbide's harassment continued unabated, in various forms, through 1996, 1997, and into 1998.

Third, even if a jury were to find that there was no continuing violation, "[c]learly established precedent dictates that '[a] discriminatory act which is not made the basis for a timely charge' can still be 'relevant background evidence' in a Title VII proceeding." *Martin v. Reno*, No. 96 Civ. 7646(NRB), 2000 WL 1863765, at *2 (S.D.N.Y. Dec.19, 2000) (quoting *United Air Lines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)). Thus, the incidents that occurred before October 7, 1997, even if time-barred, would still be relevant to "demonstrate important context for the later allegedly discriminatory behavior" of Yturbide. *Id.*, at *3. The post-October 7, 1997, acts—stalking, staring, gaping, angrily scowling, and adamantly gazing—take on a different light when considered in the context of a two-year pattern of behavior that included unwelcome grabbing of her shoulders and breasts, bumping and brushing up against her body, and inappropriate remarks such as "I want to kiss that mouth."

Accordingly, defendants' motion to dismiss the claims as time-barred is denied, and the Court shall consider all of the alleged incidents in its sexual harassment analysis.

### 2. *Hostile Environment Sexual Harassment*

■ The alleged discriminatory conduct here occurred on a weekly basis for more than two years. Yturbide's conduct ranged from physical contact with plaintiff, which was clearly intentional and sexual in nature, to, as perceived by plaintiff, threatening staring.[6] Moreover, Yturbide's con-

---

5. Defendants argue that until March 1997 plaintiff explicitly directed Armond, on several occasions, to not take any action against Yturbide, insisting instead that no one should know about the situation or that Local 1199 would handle it. There is sufficient evidence, however, to permit a reasonable jury to find that the Hospital should have acted, regardless of plaintiff's position. For example, the Hospital's own Policy and Procedure Manual places responsibility squarely on the Hospital, stating that, "[a]ll managers and supervisors

are responsible for [the sexual harassment] policy implementation and compliance." (Israelashvili Aff. Ex. C., at 2).

6. Defendants argue that Yturbide's staring, on its own, "does not come close to being sufficiently severe or pervasive" to create an actionable sexual harassment claim. (Def. Mem. at 9). As already noted, however, even if a jury ultimately finds the pre-October 7, 1997, incidents untimely, those incidents shall provide an "important context for the later

 

duct directly interfered with her work performance, as evidenced by her sick leave at the end of 1997 and her nine-month disability leave beginning in June 1998. *See Harris,* 510 U.S. at 21, 114 S.Ct. 367 (stating that a victim's "psychological well-being is, of course, relevant to determining whether [she] actually found the environment abusive"). Accordingly, resolving all ambiguities and drawing reasonable inferences in favor of plaintiff, a reasonable jury could find that Yturbide's actions constituted conduct that a reasonable person in plaintiff's position would find sufficiently severe or pervasive to alter the conditions of her employment. *See Wahlstrom v. Metro–North Commuter R.R. Co.,* 89 F.Supp.2d 506, 522 (S.D.N.Y.2000)

To impute Yturbide's harassing conduct to the Hospital, plaintiff must demonstrate that the Hospital "either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it." *Tomka,* 66 F.3d at 1305 (quoting *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 62 (2d Cir.1992)). Clear factual issues exist as to whether the Hospital, which had notice of plaintiff's allegations of a hostile work environment from the very first incident, took reasonable steps to eradicate the harassment. *See Murray v. New York Univ. College of Dentistry,* 57 F.3d 243, 249 (2d Cir.1995).

Hence, because a reasonable jury could find that Yturbide's conduct created a hostile environment and that the Hospital failed to meet its obligation to eradicate the harassment, defendants' motion for summary judgment to dismiss the Title VII claims is denied.

### CONCLUSION

For the reasons stated above, defendant Hospital's motion for summary judgement is denied. Because defendants' sole basis for seeking dismissal of plaintiff's state

allegedly discriminatory [staring]." *See also Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 314 (2d Cir.1997) (criticizing a "piecemeal" examination of the record, and stating

and city claims is its suggestion that the Court should decline to exercise supplemental jurisdiction, the motion is also denied to the extent it seeks dismissal of those claims.

The parties shall appear for a pre-trial conference on March 23, 2001, at 10 a.m., at Courtroom 11A, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York.

SO ORDERED.

that the jury is "entitled to assess [the conduct] in the context of the record as a whole").